**SO ORDERED.**

**SIGNED this 26th day of March, 2014.**





Robert E. Nugent
United States Chief Bankruptcy Judge

PUBLISHED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

TIMMY GENE RAMSEY, ) Case No. 08-13320
RHONDA SUE STELTER, ) Chapter 13

Debtors. )

## ORDER DENYING MOTION TO MODIFY CONFIRMED PLAN AND DISMISSING CASE

When these debtors confirmed their chapter 13 plan in 2009, they were above-median debtors whose applicable commitment period was five years. In calculating their projected disposable income under §1325(b), they deducted from their current monthly income over $900 a month for federal income tax withholding. On their Schedules I and J, they explained that they were not withholding for taxes before

1

they filed. The IRS filed sizeable priority tax claims for several prepetition years.[1] Under their confirmed plan, the debtors proposed to pay $10,000 in unpaid taxes to the IRS. They also proposed to pay their ongoing home mortgage through the plan. Then, in July of 2013, about six months before the five-year anniversary of their first plan payment, and in response to the Trustee's motion to dismiss for payment default, they proposed a plan modification that would pay the IRS's newly-filed post-petition tax claims of more than $16,000 for the years 2011 and 2012.[2] That claim would be paid by effectively diverting those funds from the unsecured creditors, thereby reducing the unsecured creditors' take. The Trustee objected to debtors' proposed modification on several grounds.[3] After reviewing the parties' stipulations of fact and their briefs, I deny the debtor's motion to modify and, because the plan now exceeds five years in duration, the case should either be converted or dismissed.[4]

Facts[5]

Timmy Ramsey and Rhonda Stelter filed their joint chapter 13 petition and plan on December 23, 2008. They filed all of the necessary schedules with their petition, including schedules I and J. On schedule I they stated that neither debtor had withheld federal income tax from their pay after April of 2008, and that between

---

[1] The IRS's original proof of claim encompassed income tax liabilities from 2002-2007.
[2] Dkt. 64.
[3] Dkt. 66.
[4] The debtors appeared by their attorney William Zimmerman. The chapter 13 trustee Laurie B. Williams personally appeared.
[5] The parties stipulated to the facts in this case. Those stipulations are found at Dkt. 76. The controlling facts set forth are derived from the stipulations and pleadings in the case.

2

them, some $975 should have been withheld monthly. They incorporated these figures into their Form B22C disposable income calculation as well as their Schedule J expenses. Line 30 of Form B22C requests information about "the total average monthly expenses *that you actually incur*" for taxes other than property or sales taxes. The debtors inserted a figure of $1,943. According to the note added to Line 17 of Schedule I, the debtors anticipated the $975 in monthly withholding that they reported as an expense on Schedule J and included that amount in reaching the $1,943 allowed for the payment of taxes on Form B22C, Line 30. Their B22C reports monthly disposable income of $500.27. Because the debtors' income was "above-median," they were required to commit to a five-year repayment period under § 1325(b)(4) and § 1322(d)(1).

In their plan, the debtors proposed to pay their unsecured creditors not less than $30,016.20 and to pay their ongoing mortgage payments through the trustee.[6] This required them to commit to $2,000 monthly plan payments. On February 12, 2009, the Court confirmed their plan.[7] In December of 2011, the Trustee moved to dismiss the debtors' case for payment default. On February 12, 2012, the court entered an order overruling that motion, but increasing the monthly plan payment to $2,029 until the debtors had paid in another $47,696 which would take, by my calculation, another 24 months, or until February of 2014.[8] In addition, the order

---

[6] Dkt. 6, p. 2.
[7] Dkt. 20.
[8] Dkt. 53.

3

provided that as the IRS had filed an amended proof of claim to include post-petition taxes due for 2010, that part of the Government's claim would be paid through the trustee with part of the newly-increased plan payments.[9] Then, in June of 2013, the Government again amended its claim to include unpaid taxes for 2011 and 2012 in the amounts of $9,070 and $7,418.

After the debtors again defaulted on their plan payments, prompting the trustee to file a second motion to dismiss in May of 2013, they filed the present motion to modify.[10] The debtors were behind on their plan payments, this time by $2,576, and, as the Government's amended proof of claim suggests, still not paying or withholding for current income taxes. By November, the debtors were $5,460 behind in plan payments. Under the debtors' original plan, the first payment was due on January 23, 2009.[11] The sixtieth (60th) monthly plan payment of the applicable commitment period was due January 23, 2014, now past.

In the July 2013 motion to modify their confirmed plan, the debtors ask that their plan be extended beyond their "four payments remaining" and that the funds originally to be paid to general unsecured creditors instead be paid to the IRS to cover the 2011 and 2012 taxes to the extent the receipts permit.[12] They request a "deviation from their B22C results" to allow this to happen. The Trustee objects that (1) the

---

[9] *Id.*
[10] Dkt. 59 (Trustee's Motion to Dismiss); Dkt. 64 (Debtors' Motion to Modify).
[11] *See* § 1326(a)(1). *See also Baxter v. Evans (In re Evans),* 183 B.R. 331, 332-34 (Bankr. S.D. Ga. 1995) (plan term begins when debtor is first obligated to make plan payment, not when plan is confirmed).
[12] Dkt. 64.

4

modification doesn't address the current plan payment delinquency; (2) the modification doesn't address the debtors' monthly mortgage payments; (3) the modification would not commit all of the debtors' disposable income; and (4) that the motion to modify was not filed in good faith. In her brief, the Trustee adds that the debtors have failed to demonstrate "changed circumstances" that would justify their modification request.

Analysis

After a debtor's chapter 13 plan is confirmed, the debtor or another party in interest can propose modifications for certain purposes, including to increase or decrease payments on particular classes of claims and to extend the time for paying those claims.[13] A proposed modification can only be approved if it comports with § 1322(a) and (b) which require, among other things, that the debtor's plan provide for the full payment of priority claims under § 507(a).[14] As § 1329(b) only requires a modified plan to comply with subsection (a) of § 1325, § 1325(b)'s means test need not be considered. But § 1329(c) only allows the Court to extend the time for payment of claims up to five years after the first payment was due under the debtor's original plan. In other words, a plan cannot be modified in a way that gets around the five year limit found in § 1322(d).[15]

---

[13] 11 U.S.C. § 1329(a)(1) and (2).
[14] § 1329(b)(1) and § 1322(a)(2).
[15] *See Profit v. Savage (In re Profit),* 283 B.R. 567, 575-76 (9th Cir. BAP 2002) (plan could not be modified after 60-month term had expired even though motion to modify was filed prior to expiration of 60th month).

5

The Trustee is correct that the debtors' proposed modification makes no provision for curing the immediate $5,460 payment default. If they do not cure, the debtors will have failed to honor their commitment to pay their projected disposable income to their unsecured creditors. If the debtors do not cure the plan default by the end of the five year applicable commitment period, they will not receive a discharge.[16] And, as the Trustee points out, the debtors' failure to make plan payments is grounds for dismissal under § 1307(c)(6).

The fact that the other unsecured creditors will not receive what they expected to get under the original confirmed plan is not necessarily a basis for rejecting this modification if the debtors can show a reasonable basis for departing from that original confirmation order. If, as the parties stipulate, the IRS has filed an amended proof of claim for the post-petition taxes due for 2011 and 2012, those taxes constitute allowed post-petition claims under § 1305. Because they are for income taxes, because the IRS filed a proof of claim for them, and because the claim is to be allowed "the same as if" the claims had arisen pre-petition, the claims constitute unsecured priority claims under § 507(a)(8).[17] Because § 1329(b)(1) reads § 1322(a)(2) and § 1325(a)(1) into the requirements for confirmation of a plan modification, the debtor is required to provide for post-petition tax claims to be paid in full. This would operate to reduce the payments to the general unsecured creditors while increasing payments to a priority unsecured creditor as is permitted by § 1329(a)(1).

---

[16] Section 1328(a)(1) only grants a discharge "after completion by the debtor of all payments under the plan."
[17] *See In re Brensing*, 337 B.R. 376, 381-82 (Bankr. D. Kan. 2006); 11 U.S.C. § 1305(a)(1) and (b).

Case 08-13320    Doc# 89    Filed 03/26/14    Page 6 of 10

The debtors have two other insurmountable problems. The first is that they cannot pay the new priority tax claims in full over the life of the plan, rendering it unfeasible. Even if they could pay, the debtors failed to demonstrate that their circumstances have changed to a degree that would warrant modifying the present plan.

The amended priority tax claims amount to $16,418. The debtors' monthly payments are $2,029 a month. The five year period within which their plan must be completed, and which effectively brackets the time such a plan may be extended under § 1329(c), ended on January 23, 2014. Thus, when the debtors sought this modification on July 22, 2013, they had 6 months left in the life of their plan. Six payments of $2,029 total $12,174, far short of what is needed to pay the government's § 1305 claims.[18] Even if the debtors had a means of curing the current $5,460 payment delinquency, that would only yield a gross total amount paid under the modified plan of $17,634 which, after deduction of the trustee's fees, would not suffice to pay the tax claims in full, contrary to §1322(a)(2). The modification is not feasible and does not comply with §1325(a)(1) and (6), two other provisions that are read into the modification confirmation requirements by § 1329(b)(1).[19]

Though the Code does not expressly require the debtors to show a change in their circumstances sufficient to warrant confirmation of a modified plan, some courts

---

[18] The debtors' proposed modification does not change the amount of the monthly plan payment.
[19] *In re McClam*, No. 08-11544PM, 2009 WL 2928240 (Bankr. D. Md. Aug. 13, 2009) (plan could not be modified to extend duration to 76 months due to 5-year limitation in § 1329(c)).

7

hold as much.[20] They reason that a confirmed plan is accorded a significant degree of finality under § 1327(a) that should not be disturbed unless a debtor has experienced a substantial or material unanticipated change in circumstances.[21] Nothing in this record suggests such a change. The debtors have failed to provide for the payment of their post-petition taxes; they similarly failed to provide for those payments pre-petition. Both debtors were employed at filing; they remain so today. Nor does anything in their motion explain or justify their current plan default.

In short, the debtors' failure to provide for a cure of their payment default, their failure to provide for the full payment of the priority tax claims, the five-year durational limit, and the lack of evidence of an unanticipated, material and substantial change in the debtors' circumstances all combine to defeat their motion to modify.

I recognize that whether changed circumstances is a predicate for modifying a confirmed chapter 13 plan remains uncertain in this Circuit as the Tenth Circuit Court of Appeals has yet to decide that issue. Even so, the trustee has also raised the debtors' lack of good faith as an objection. The modification must be proposed in good

---

[20] *See* Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 257.1, Sec. Rev. June 9, 2004, www.Ch13online.com, for discussion of the changed-circumstances requirement and the split of authority among the circuit and bankruptcy courts. The Tenth Circuit has not decided this issue.

[21] *In re Grutsch*, 453 B.R. 420, 427-29 (Bankr. D. Kan. 2011) (analyzing modification under the good faith confirmation requirement of § 1325(a)(3) court held that debtor's voluntary retirement was not a sufficient change of circumstances justifying a reduction in the length of her plan from 60 months to 36 months); *In re Mellors*, 372 B.R. 763, 769-71 (Bankr. W.D. Pa. 2007) (confirmation order is res judicata on modifications that could have been litigated at the confirmation hearing; debtors post-confirmation discovery of vehicle's cracked frame was sufficient change of circumstances such that debtors could modify creditor's treatment by surrendering the vehicle).

8

faith under §§ 1325(a)(3) and 1329(b)(1). In this Circuit, the *Flygare* factors guide the Court's determination whether the modification is proposed in good faith.[22] The eleven factors are nonexclusive and the Court may consider other relevant circumstances to determine good faith, including changed circumstances.[23] Indeed, the eighth *Flygare* factor itself is the existence of "special circumstances."

I am troubled by the debtors' apparent inability or unwillingness to withhold or pay their post-petition income taxes for three years while under the court's protection and even after they chose to take those proposed withholdings as deductions from income on schedule J in 2008 and on Form B22C to calculate disposable income. The debtors' good faith might not be questioned if their failure to address their income tax responsibilities were an isolated circumstance. But it isn't. The debtors were not withholding in 2008 before they filed their petition – and they recognized that fact when the filled out Schedule J and Form B22C. Indeed, the IRS's proofs of claim state that the debtors have not been paying their federal income taxes since 2002.[24] After confirmation, and in response to the trustee's first motion to dismiss, the debtors agreed to increase their plan payment, in part to pay their post-petition 2010 tax liability of $10,000. This suggests that they never withheld taxes

---

[22] *Flygare v. Boulden,* 709 F.2d 1344, 1347-48 (10th Cir. 1983).
[23] *See* CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 257.1 at ¶ 15, www.Ch13online.com, *supra* where the treatise authors advocate that changed circumstances should be considered evidence bearing on other statutory requirements for modification and might be probative of the proponent's good faith under § 1325(a)(3).
[24] *See* Claim 9-4. Since 2009, the IRS's claim has grown from $16,252 to $42,254. The Kansas Department of Revenue's claim seeks payment of unpaid taxes dating to 2005. Claim 12-1.

9

post-petition and simply applied those funds to other purposes. And debtors thereafter failed to withhold or pay their taxes, prompting the current motion to modify to address their 2011 tax liability of $9,000 and their 2012 tax liability of $7,400. They weren't paying their post-petition taxes, while simultaneously defaulting on their plan payments. In short, the debtors' refusal to pay their taxes has been a problem for many years and, certainly, since day one of this case. This can only be attributed to their own conduct and their unwillingness to withhold or pay these tax obligations. The pattern of pre-petition nonpayment, combined with the their repeated failure to pay their post-petition taxes as they came due and their present desire to pay these non-dischargeable debts at the expense of the general unsecured creditors suggests that they have learned little from their sojourn in bankruptcy and strongly suggests their lack of good faith, supplying yet another reason to deny the motion.[25]

The debtors' motion to modify is DENIED. The Trustee's motion to dismiss under § 1307(c)(6) is GRANTED, but the order of dismissal shall be stayed for 14 days to give the debtors an opportunity to convert their case to one under chapter 7.

### 

---

[25] See §§ 1325(a)(3) and 1329(b)(1).